1

2                                                     *E-filed*:           09/02/08

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                              SAN JOSE DIVISION

10

11   WILMA WODTLI,                          No. C-05-03921 RMW

12              Plaintiff,                   ORDER DENYING PLAINTIFF'S MOTION
                                             FOR SUMMARY JUDGMENT AND
13        v.                                 GRANTING DEFENDANT'S CROSS-
                                             MOTION FOR SUMMARY JUDGMENT
14   MICHAEL J. ASTRUE[1],
     Commissioner, Social Security Administration,   **[Re Docket Nos. 16, 18]**
15
                Defendant.
16

17        Plaintiff Wilma Wodtli ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for

18   judicial review of the decision of Defendant Commissioner of Social Security ("Commissioner")

19   denying her claim for Supplemental Security Income under Title XVI of the Social Security Act.[2]

20   Plaintiff and the Commissioner filed cross-motions for summary judgment.  Plaintiff alleges that the

21   findings of the ALJ regarding Plaintiff's ability to perform other work are unsupported by

22   substantial evidence and were reached by improper application of law.  Specifically, Plaintiff claims

23   the ALJ improperly rejected testimony by Plaintiff's treating physicians, social worker, Plaintiff

24

25        [1]  Michael J. Astrue became Commissioner of the Social Security Administration on February
     1, 2007.  Pursuant to Ruled 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby
26   substituted for Jo Anne B. Barnhart as the Defendant in this matter.

27        [2]  The challenged decision was rendered by Administrative Law Judge Richard P. Laverdure
     ("the ALJ") on March 24, 2004.  The ALJ's decision became final on July 23, 2005 when the Appeals
28   Council of the Social Security Administration denied Plaintiff's request for administrative review of the
     ALJ's decision.

1   herself, and Plaintiff's sister, and that the ALJ's findings regarding Plaintiff's alcohol use and

2   vocational ability were not supported by substantial evidence.

3       Pursuant to this Court's procedures for review of social security actions, the parties' motions

4   have been submitted without oral argument.  Based on the moving papers and the Court's own

5   analysis of the record, the Court will grant Defendant's cross-motion for summary judgment and

6   deny Plaintiff's motion for summary judgment or remand.

7                                    **I. BACKGROUND**

8       The following facts are taken from the March 24, 2004 ALJ decision and the accompanying

9   administrative record ("AR").  Plaintiff was forty-nine years old at the time she applied for disability

10  insurance benefits.  AR at 523, 617-18.  She dropped out of school after completing the eighth grade

11  in special education classes.  *Id.* at 524.  She worked for more than eleven years as a housekeeper in

12  a nursing home, performing laundry and housekeeping duties.  *Id.* at 525-26.  Plaintiff was fired

13  from her job in June 2001 in part because she got angry for having to do more work than a co-

14  worker and in part because of her use of alcohol.  *Id.* at 216, 530-31, 619.

15      From March to December 2000, Plaintiff was examined for complaints of asthma,

16  depression, lower back pain and hip soreness.  *Id.* at 264, 266, 271.  In October 2000, an MRI of

17  Plaintiff's left knee showed mild degenerative changes of the knee joint.  *Id.* at  279.  In January

18  2001, an x-ray of Plaintiff's lumbar spine showed mild to moderate degenerative changes, but the

19  doctor returned her to regular work.  *Id.* at 278, 620.  On May 4, 2001, Plaintiff underwent lumbar

20  epidural steroid injections for lumbar radiculopathy.  *Id.* at 210-11.  On May 14, 2001, after Plaintiff

21  had fallen down two stairs resulting in lower back pain and a swollen ankle, x-rays showed a

22  fracture in her left ankle; the doctor returned her to work.  *Id.* at 206-09; 620.

23      On August 18, 2001, Plaintiff was admitted to the emergency room for decreased

24  consciousness and confusion, apparently as a result of alcohol withdrawals.  *Id.* at 171-73.  Plaintiff

25  was instructed not to drink any more alcohol "after having a substantial habit of about a bottle of

26  whiskey every two days plus some beer."  *Id.*  Plaintiff's mother had died about three months prior.

27  *Id.* at 172.  Plaintiff's x-rays showed pneumonia, gallbladder distention and intrinsic liver disease.

28  *Id.* at 187.  Upon discharge, Plaintiff was "instructed to stop drinking entirely, [which] she agreed to

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT—C-05-03921  RMW
JSS                                            2

do," and to continue taking various medications. *Id.* at 171. On November 1, 2001, Plaintiff was admitted to the emergency room for alcohol intoxication and panic attack. *Id.* at 202-05. Plaintiff admitted drinking despite being previously told not to. *Id.* at 619.

In January 2002, treating physician Dr. Mark Spencer at Cascade Medical Group in Arlington, Washington stated that claimant was a recovering alcoholic with alcohol induced hepatitis and he encouraged Plaintiff to abstain from alcohol completely. *Id.* at 233, 620. Dr. Spencer referred Plaintiff to a treatment center on March 29, 2002. *Id.* at 232, 620. On May 16, 2002, it was noted that claimant quit using alcohol six weeks before and was going to Alcoholic Anonymous meetings three times a week. *Id.* at 226, 620.

In February 2002, Plaintiff had a consultative psychiatric evaluation performed by Dr. David Sandvik, M.D., who diagnosed her with "alcohol abuse and dependency, . . . personality disorder, . . . history of asthma, . . . and sever[e] psychosocial stressors." *Id.* at 217. Dr. Sandvik noted Plaintiff's social experience, relationship problems, and "severe alcoholism" and concluded that "at this time alcohol abuse, which is continuing, appears to be a central problem." *Id.* at 218.

Plaintiff had a mental residual functional capacity ("RFC") form completed by state physician in February 2002. *Id.* at 314-17. The form indicated that Plaintiff was "moderately limited" in her ability to understand, remember and carry out detailed instructions, and to complete a normal workday without rest periods. *Id.* at 314-15. The psychiatric review indicated that Plaintiff had personality disorder, substance addiction disorder and a mild restriction of activities of daily living. *Id.* at 318, 328.

In April 2002, Plaintiff began an outpatient alcohol treatment program. *Id.* at 283. Records from June 2002 indicate that plaintiff was making good progress in her treatment so far, had been abstinent for three months, and had only missed one appointment. *Id.* Plaintiff was also found to have suffered from past abuse and significant life hardships including: sexual abuse by her twin brother, physical abuse by old boyfriends, suicide attempts as a teenager, near overdose by her daughter, and having a husband and daughter who are HIV positive. *Id.* at 307. Records do not indicate whether Plaintiff completed the alcohol treatment program. *Id.* at 620.

1    In March 2003, treating physician Margaret Arner admitted Plaintiff, noting she still drank

2    one or two beers a day, but was drinking a pint of whiskey a year ago.  Plaintiff had been taking

3    anti-inflammatory medication for arthritis and Zoloft for the last ten years for depression, but

4    stopped taking both about a year ago.  *Id.* at 335-36.  X-rays of Plaintiff from June 2003 showed

5    degenerative disc disease.  *Id.* at 352.  From May to June 2003, Plaintiff missed three appointments

6    with Arner.  Although Dr. Arner sent Plaintiff a letter stating that she could no longer see Plaintiff

7    because of Plaintiff's failures to keep her appointments, Plaintiff requested and Dr. Arner agreed to

8    fill out Plaintiff's RFC form for her disability benefits application.  Dr. Arner's July 2003

9    assessment of Plaintiff indicated at least three times that she did "not know this patient well," at least

10   in part because "she has missed too many appointments."  *Id.* at 356-58.  In response to the question

11   asking whether Plaintiff would have difficulty maintaining the basic demands of any job, Dr. Arner

12   answered "Yes . . . [a]s the patient describes her abilities to me.  I do not know her well."  *Id.* at

13   358.

14   In June 2003, treating primary care physician Dr. Ronald Zimmerman (internist) at

15   Mendocino Community Health Clinic examined Plaintiff for the first time, indicating

16   "heavy" alcohol consumption recently but "reduced" current alcohol usage.  *Id.* at 344, 621.  In

17   September 2003, Dr. Zimmerman noted that Plaintiff needed to sit after walking two blocks.  *Id.* at

18   467. Dr. Zimmerman also noted that Plaintiff had "rescheduled" her appointment with her

19   dermatologist.  *Id.* at 363.  Plaintiff reported seeing a psychologist.  Dr. Zimmerman advised

20   Plaintiff to follow through with a psychiatrist for her depression and a dietician for her obesity.  *Id.*

21   at 465.

22   From July to November 2003, social worker Susan Knopf saw claimant and indicated that

23   Plaintiff was diagnosed with major depression, had a speech impediment and seemed unable to cope

24   with anything involving reading or arithmetic.  *Id.* at 470.  Knopf noted that seven of Plaintiff's

25   close relatives had died in the last two years and that Plaintiff's partner of almost twelve years died

26   recently, leaving Plaintiff homeless and helpless.  *Id.*  Plaintiff had lost custody of two of her four

27   adult children because she was found "unfit."  *Id.*  In November 2003, Knopf noted Plaintiff missed

28   her appointment.  *Id.* at 457.  On November 26, 2003, Knopf filled out a medical source statement

1    indicating that Plaintiff was "markedly limited" in her ability to understand, remember and carry out

2    detailed instructions, or complete a normal workday without an unreasonable number and length of

3    rest periods.  *Id.* at 448-49.  Knopf indicated Plaintiff was moderately limited in her ability to

4    understand, remember and carry out short and simple instructions.  *Id.*

5            In January 2004, Dr. Zimmerman filled out a mental evaluation of Plaintiff, finding she was

6    "markedly limited" in her ability to understand and remember detailed instructions, and "moderately

7    limited" in understanding and remembering very short and simple instructions.  *Id.* at 480.  Dr.

8    Zimmerman also found Plaintiff was "not significantly limited" in carrying out short and simple

9    instructions, and was "mildly limited" in carrying out detailed instructions and completing a normal

10   workday without an unreasonable number and length of rest periods.  *Id.* at 481.  Dr. Zimmerman

11   noted that his "impression [was] only based on a few visits to [his] office."  *Id.* at 483.  Dr.

12   Zimmerman's physical RFC form indicated that plaintiff could not tolerate even "low stress" jobs,

13   could sit for fifteen minutes at a time, stand for thirty minutes at a time, sit, stand or walk for a total

14   of two hours a working day, must take unscheduled breaks during a workday to "sit, stand, walk and

15   lie down hourly," and could lift less than 10 pounds rarely.  *Id.* at 484-86.

16                                    **II. LEGAL STANDARD**

17   **A.  Standard for Reviewing the Commissioner's Decision**

18           Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

19   decision denying Plaintiff benefits.  The Commissioner's decision (here the decision of the ALJ)

20   will be disturbed only if it is not supported by substantial evidence or if it is based upon the

21   application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995);

22   *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this context, the term "substantial

23   evidence" means "more than a mere scintilla but less than a preponderance - it is such relevant

24   evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60

25   F.3d at 523; *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to

26   support the ALJ's decision, the Court examines the administrative record as a whole, considering

27   adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d

28   498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the

1    Court must defer to the decision of the ALJ. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

2    **B. Standard for Determining Disability**

3            A person is "disabled" for purposes of receiving social security benefits if he or she is unable

4    to engage in any substantial gainful activity as a result of a physical or mental impairment which is

5    expected to result in death or which has lasted or is expected to last for a continuous period of at

6    least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.

7    1984).  Social Security disability cases are evaluated using a five-step, sequential evaluation process.

8    In the first step, the Commissioner must determine whether the claimant currently is engaged in

9    substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Id.*  If the

10   claimant is not currently engaged in substantial gainful activity, the second step requires the

11   Commissioner to determine whether the claimant has a "severe" impairment or combination of

12   impairments which significantly limits the claimant's ability to do basic work activities; if not, a

13   finding of "not disabled" is made and the claim is denied. *Id.*  If the claimant has a "severe"

14   impairment or combination of impairments, the third step requires the Commissioner to determine

15   whether the impairment or combination of impairments meets or equals an impairment in the

16   Listing; if so, disability is conclusively presumed and benefits are awarded. *Id.*  If the claimant's

17   impairment or combination of impairments does not meet or equal an impairment in the Listing, the

18   fourth step requires the Commissioner to determine whether the claimant has sufficient "residual

19   functional capacity"[3] to perform his or her past work; if so, the claimant is not disabled and the claim

20   is denied. *Id.*  The plaintiff has the burden of proving that he or she is unable to perform past

21   relevant work. *Drouin*, 966 F.2d at 1257.  If the claimant meets this burden, a *prima facie* case of

22   disability is established.  The Commissioner then bears the burden of establishing that the claimant

23   can perform other substantial gainful work;[4] the determination of this issue comprises the fifth and

24

25           [3]  A claimant's residual functional capacity is what he or she can still do despite existing
     exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).
26

27           [4]  There are two ways for the Commissioner to meet the burden of showing that there is other
     work in significant numbers in the national economy that claimant can do:  (1) by the testimony of a
     vocational expert or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d
28   1094, 1099 (9th Cir. 1999).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT—C-05-03921  RMW
JSS                                          6

1    final step in the sequential analysis.  20 C.F.R.§§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821,

2    828 n.5 (9th Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

3                                    **III.  ANALYSIS**

4            Plaintiff asks this Court to determine that she is disabled.  Alternatively, Plaintiff requests

5    that her case be remanded to the ALJ for additional administrative proceedings to determine whether

6    she is disabled.  The specific issues raised in this case are (1) whether the ALJ properly rejected the

7    opinions of Plaintiff's treating physicians and social worker; (2) whether the ALJ properly rejected

8    Plaintiff's testimony; (3) whether the ALJ properly rejected testimony by Plaintiff's sister; and (4)

9    whether the ALJ properly assessed Plaintiff's ability to perform other work.

10   **A.    The ALJ's Consideration of Medical Evidence**

11           Plaintiff claims that the ALJ improperly rejected testimony of her treating physicians, Drs.

12   Zimmerman and Arner, and her social worker, Susan Knopf.  Mot. at 13; Reply at 2.  Plaintiff argues

13   that the ALJ rejected both Dr. Zimmerman's testimony that Plaintiff could only rarely lift less than

14   ten pounds and Dr. Arner's testimony that Plaintiff "would have difficulty maintaining the basic

15   demands of any job on a consistent basis."  Mot. at 15.  Thus, Plaintiff argues that the ALJ's

16   conclusion that Plaintiff retained an RFC to perform light work is erroneous because it relied solely

17   on a non-treating and non-examining state physician's assessment.  Mot. at 14-15; Reply at 2.  The

18   Commissioner asserts that the ALJ provided legally sufficient reasons for declining to adopt these

19   opinions.

20           Greater weight usually is given to the opinion of a treating physician.  *Batson v. Comm'r of*

21   *Social Security Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan,* 981 F.2d

22   1016, 1019 (9th Cir. 1992)).  However, a treating physician's opinion is not always binding, and in

23   the case of a conflict, the ALJ must give specific, legitimate reasons" for disregarding a treating

24   physician's opinion."  *Id.*

25           Here, the record shows that the ALJ carefully considered Dr. Zimmerman's findings and

26   conclusions.  The ALJ included the medical findings of Dr. Zimmerman in the record.  AR 621-22.

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT—C-05-03921  RMW
JSS                                    7

1    However, the ALJ concluded that the evidence from Dr. Zimmerman was based on little contact

2    with Plaintiff and therefore presented an incomplete picture.  AR. 624, 626.  For example, the ALJ

3    noted that Dr. Zimmerman "indicated that the limitations assessed had not lasted 12 continuous

4    months and were not expected to last 12 continuous months based on the assessed severity."  *Id.* at

5    624.  The ALJ also noted that Dr. Zimmerman reported that his "impression was 'only based on a

6    few visits to office.'"  *Id.*  The ALJ finally noted that Dr. Zimmerman was an internist in primary

7    care medicine who filled out a mental evaluation for Plaintiff in place of the actual treating

8    psychiatrist, Dr. Brown.  *Id.* at 621, 623, 624, 626.  Thus, the Court concludes that the ALJ

9    adequately explained his reasons for giving little weight to Dr. Zimmerman's opinion.

10        The Court also finds that the ALJ did not reject Dr. Arner's testimony without reason as

11   Plaintiff contends.  *See* Reply at 2.  The ALJ included the medical findings of Dr. Arner in the

12   record.  AR 620-21.  The ALJ acknowledged Dr. Arner's opinion that Plaintiff would have difficulty

13   maintaining a full time job.  *Id.* at 621.  However, the ALJ qualified this opinion by noting that Dr.

14   Arner did not know Plaintiff well and was opining based on Plaintiff's description of her abilities,

15   not on Dr. Arner's observations of the Plaintiff.  *Id.*  To the extent the ALJ rejected part of Dr.

16   Arner's testimony, the ALJ specified that Dr. Arner reported that Plaintiff had missed many

17   appointments with Dr. Arner and that Dr. Arner stated that she did not know the Plaintiff well.[5]  *Id.*

18   at 356, 621.

19        Plaintiff contends that the ALJ based its RFC finding solely on the opinion of "the state agency

20   physician."[6]  Reply at 2-3; *see* AR 219-24, 314-16, 626.  The court disagrees. The ALJ concluded

21   that Plaintiff retained the RFC to do limited light work without substance abuse, a conclusion that

22

23        [5]  Moreover, even if the ALJ had fully credited Dr. Arner's testimony, Plaintiff does not show
     how Dr. Arner's testimony would lead to a finding of disability. Mot. at 15. Dr. Arner testified that
24   Plaintiff could sit, stand or walk for about 4 out of an 8-hour workday and could lift 10 pounds
     frequently and 20 pounds rarely. AR at 357. Thus, this court finds both that the ALJ considered Dr.
25   Arner's testimony appropriately and that Dr. Arner's testimony does not conflict with the ALJ's
     conclusion regarding plaintiff's RFC.

26        [6]  It is unclear on which state physician Plaintiff is basing this argument.  Plaintiff's motion cites
     to both AR 31 and AR 219-24. Mot. at 15. At AR 31, the ALJ discusses both "state agency medical
27   consultant Dr. Anita Peterson['s]" report of February 2002 and the "state agency['s]" report of February
     28, 2002. AR 219-24 contains a state physician's report dated March 4, 2003. The ALJ expressly made
28   his RFC finding based on evidence other than the state agency's February, 2002 report[s].  AR 626.

1  differed from one state physician's finding in 2002.  AR 626.  In reaching his conclusion, the ALJ

2  stated he relied not solely on any one physician's opinion, but on "the updated medical evidence and

3  the testimony of claimant and the vocational evidence."  *Id.*  Although Plaintiff cites *Erickson v.*

4  *Shalala*[7], for support, *Erickson* is distinguishable.  *In Erickson*, the ALJ gave no weight to a non-

5  examining doctor's conclusion where the non-examining doctor based his opinion solely on one test

6  and neither examining doctor reached that same conclusion.  9 F.3d at 819.  The ALJ held that the

7  evidence was insufficient to support finding that plaintiff could do light work.  *Id.*  Unlike in

8  *Erickson*, here the ALJ relied on the opinions both the non-treating physician and Plaintiff's treating

9  physicians.  As set forth below, the Court finds that the ALJ properly weighed the medical testimony

10 with the Plaintiff's testimony and a lay witness's testimony, and a vocational expert's findings to

11 reach a conclusion regarding Plaintiff's RFC.  Thus, the ALJ did not make its RFC finding based

12 solely on a non-examining state physician's testimony.

13        Finally, the Court agrees with the ALJ's consideration of testimony given by social worker

14 Knopf because Knopf is not an acceptable medical source under the applicable regulations.  *See* 20

15 C.F.R. §§ 404.1513, 416.913.  Moreover, as the ALJ noted, Knopf worked with Plaintiff for less

16 than one year.  AR 626.  Thus, since the ALJ properly evaluated testimony given by Plaintiff's

17 treating physicians and social worker, the Court finds that the ALJ's conclusion regarding Plaintiff's

18 RFC is supported by substantial evidence.

19 **B.   ALJ's Consideration of Plaintiff's Testimony**

20        Plaintiff next claims that the ALJ erred in his determination that the medical evidence does not

21 support Plaintiff's subjective complaints of pain and her physical and psychological limitations.

22 Motion at 17.  Plaintiff asserts that the ALJ was required to find "clear and convincing" reasons for

23 rejecting Plaintiff's testimony and to "specifically identify what testimony is credible and what

24 testimony undermines the claimant's complaints" but that the ALJ failed to properly do so.  *Id.*,

25 *citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).   Plaintiff contends that the ALJ's

26

27

28        [7]   9 F.3d 813 (9th Cir. 1993).

1   reasoning that "objective evidence does not support her allegations to the extent alleged" does not

2   suffice.  Motion at 18 *citing* AR 625.

3        This Court's review of the ALJ's decision regarding credibility determinations is limited.

4   *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing

5   court must resolve conflicts in the evidence, and if the evidence can support either outcome, the

6   court may not substitute its judgment for that of the ALJ.") In the instant case, the ALJ considered

7   Plaintiff's testimony in concluding Plaintiff had an RFC to do limited light work.  Plaintiff testified

8   that she could not do other work because she is dyslexic, cannot do basic math, and can barely read.

9   AR 624.  However, Plaintiff confirmed that she sometimes still drank alcohol, most recently the

10  night before the hearing.  *Id.*  She also stated she had special education until ninth grade and could

11  walk about half a block.  *Id.* at 624-25. The ALJ considered Plaintiff's complaints in concluding that

12  "[t]he medical evidence is reasonably consistent and leads to a conclusion that if claimant were to

13  remain sober, she would be able to do a limited range of light work" and that "[a]ll of the medical

14  records indicate better functioning with abstinence and with medical compliance." *Id.* at 625.  In

15  noting that Plaintiff's complaints were not fully credible, the ALJ cited that Plaintiff missed many of

16  her doctors' appointments and that Plaintiff's alcohol use constituted a failure to follow prescribed

17  treatment.  *Id.* at 625-26.

18       The Ninth Circuit has provided examples of specific findings that may support a finding that a

19  claimant's allegations are not credible, including "unexplained, or inadequately explained, failure to

20  seek treatment or follow a prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346-

21  47 (9th Cir. 1991)(en banc).  Here, the ALJ found that Plaintiff still drank despite having been told

22  by her doctors to stop drinking.  The ALJ also found that Plaintiff's depression was likely to

23  improve if she did not drink and maintained treatment.  AR 625.  Accordingly, the ALJ did not

24  improperly reject Plaintiff's testimony that she could not do other work.

25       Plaintiff's testimony without the support of objective medical evidence is insufficient to

26  establish disability.  *See* 20 C.F.R. §§ 416.929(a) ("statements about your pain or other symptoms

27  will not alone establish that you are disabled"), 404.1528(a) ("[y]our statements alone are not

28  enough to establish that there is a physical or mental impairment"); *Flaten v Secretary of HHS*, 44

1   F.3d 1453, 1464 (9th Cir. 1995) ("[a]n opinion of disability premised to a large extent upon a

2   claimant's own accounts of his symptoms and limitations may be disregarded where those

3   complaints have been 'properly discounted'"). Thus, the ALJ had proper legal basis for discounting

4   Plaintiff's statements as not entirely credible.

5   **C.    ALJ's Consideration of Plaintiff's Sister's Lay Testimony**

6       Plaintiff's sister, Linda Lee Samples, testified at the hearing. AR 552-576. Ms. Samples

7   testified that Plaintiff could not work whether or not she was drinking. AR 559. Plaintiff argues that

8   the ALJ ignored this lay witness testimony. Because of this, the ALJ's findings are fundamentally

9   flawed, argues Plaintiff. *See Stout v. Commissioner of Social Security*, 454 F.3d 1050 (9th Cir.

10  2006) ("where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable

11  to the claimant, a reviewing court cannot consider the error harmless unless it can confidently

12  conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different

13  disability determination.")

14      Here, the ALJ discussed Samples's testimony in his decision. AR 625. The ALJ noted that

15  Samples testified that Plaintiff drinks about once or twice a week, and had started drinking again.

16  *Id.* Further the ALJ noted that Samples testified that Plaintiff cannot work now because of her

17  physical condition regardless of whether Plaintiff drank. *Id.* Thus, the ALJ expressly considered

18  and discussed Samples's testimony.

19      However, Plaintiff makes no argument as to how Samples's testimony would have changed the

20  ALJ's conclusion regarding Plaintiff's RFC and the Court finds that the ALJ "properly discussed"

21  Samples's testimony. *See* AR 625. To the extent that Plaintiff seeks consideration of Samples's

22  testimony to contradict the conclusions of medical doctors, the ALJ properly disregarded Samples's

23  testimony. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984). Thus, the Court finds that

24  the ALJ properly considered Samples's testimony in its decision.

25  **D.    ALJ's Finding of Plaintiff's Ability to Perform Other Work**

26      Finally, Plaintiff challenges the ALJ's finding that Plaintiff's disability was connected with her

27  problem with alcohol addiction. AR. 618. Plaintiff contends she is disabled even without alcohol

28  abuse. Mot. at 20. Plaintiff also challenges the evidentiary value of the state vocational expert's

1  ("VE") testimony and argues that the VE improperly disregarded Plaintiff's limitation of pain.  Mot.

2  at 22.

3         The Court first finds that the ALJ did not err in its analysis that without substance addiction,

4  Plaintiff would be able to do limited light work.  Plaintiff argues that her alcohol dependency has

5  improved and that her mental impairments cause her to abuse alcohol.  Mot. at 20.  Plaintiff cites

6  social worker Knopf's testimony as evidence of the severity of her limitations even without

7  substance addiction.  AR 448.  Plaintiff appears to argue that since the ALJ found Plaintiff to have

8  "personality disorder," Plaintiff has a non-alcohol related impairment that would support a finding of

9  disability.  Mot. at 21.  Finally, Plaintiff argues the ALJ concluded Plaintiff's alcohol abuse was

10  material based solely on the opinion of a non-treating state physician.  Reply at 5.

11         However, Plaintiff's existing alcohol problem is corroborated by her own testimony as well as

12  her sister's testimony.  *See* AR 521, 553.  Further, the Court finds that Knopf's testimony does not

13  support the conclusion that Plaintiff would not be able to perform light work without alcohol

14  addiction and that moreover, the ALJ gave Knopf's testimony appropriate weight as a non-medical

15  source.  Finally, the Court finds insufficient evidence in the medical record to overturn the ALJ's

16  finding that Plaintiff's personality disorder did not arise to the level required for a finding of

17  disability.  *See* AR 447-83.  Thus, the Court affirms the ALJ's finding that Plaintiff is capable of

18  performing limited light work without substance addiction.  *See Bustamamte v. Massanari*, 226 F.3d

19  949, 954 (9th Cir. 2001).

20         Further, the Court finds that the VE adequately considered Plaintiff's limitations that were

21  supported by medical evidence.  AR 586-87 (considering that Plaintiff is limited to:"[her] age,

22  education, and experience" and "[doing] exertionally light work . . . simple repetitive tasks,

23  occasional public contact . . . avoid[ing] concentrated exposure to fumes, dust, gases, and similar

24  environmental pollutants").  The VE need not consider limitations that are not supported by the

25  medical evidence.  *Magallanes v. Bowen*, 881 F.2d at 756-57 (9th Cir. 1988) (holding that a VE's

26  limitations posed in a hypothetical question are objectionable "only if the assumed facts could not be

27  supported by the record").  The VE testified that a person would not be able to perform an assembler

28  job if she were "unable to apply common understanding, to carry out detailed written or oral

1   instructions." AR 597. Indeed, the ALJ noted Plaintiff's treating physicians testimony that Plaintiff

2   may have "difficulty . . . retaining instructions" and that Plaintiff was "markedly limited [in] . . .

3   understand[ing] . . . detailed instructions," and state agency physician Peterson's finding that

4   Plaintiff was moderately limited in her ability to carry out detailed instructions. AR 314-16, 358,

5   480. However, the Court finds that the VE considered various job types that Plaintiff could do with

6   her limitations. AR 597-602 (considering Plaintiff's reasoning and language development level for

7   unskilled jobs such as "semi conductor bonder"). As noted above, the Court finds the ALJ gave

8   sufficient reasons for discrediting Plaintiff's pain allegations. *See* Tr. 625. The ALJ therefore

9   properly relied on the VE's testimony in making Plaintiff's RFC determination.

10   **E.    Subsequently Cited Cases**

11          Following the completion of the briefing in this matter, Plaintiff filed a Statement of Recent

12   Decision pursuant to Civil L.R. 7-3 bringing to the Court's attention *Orn v. Astrue*, 495 F.3d 625

13   (9th Cir. 2007) and *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007). *Orn* confirmed the rule that

14   the rejection of treating physicians' opinions must be supported by substantial evidence. The ALJ

15   here did discuss the treating physicians' opinions and did have substantial evidence on which to

16   reject their testimony. The treating physicians' opinions in this case were, in large part, not rejected

17   but limited in what they could provide as a consequence of Plaintiff's failure to keep appointments.

18          It is not clear why the Plaintiff called the court's attention to *Massachi*. The Court of Appeals

19   affirmed in part and vacated and remanded in part an ALJ's decision denying benefits to the

20   claimant. No governing standard was cited that appears to have application to the current case,

21   except for standards previously discussed.

22                                         **IV.  ORDER**

23          Good cause therefor appearing, IT IS HEREBY ORDERED that Plaintiff's motion for

24   summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED. The

25   clerk shall enter judgment and close the file.

26

27   DATE: September 2, 2008

28                                         RONALD M. WHYTE
                                           United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT—C-05-03921 RMW
JSS                                        13

1  **Notice of this document has been sent to:**

2  **Counsel for plaintiff:**

3  Barbara M. Rizzo

4  mail@fedlaborlaw.com

5

6  **Counsel for defendant:**

7  Peter Thompson

   peter.thompson@ssa.gov

8

9

10

11

12

13  Date:   9/2/2008                                    s/JSS
                                                        Chambers of Judge Whyte

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28